Jessie James Greer, Tom Heflin Moore, Jr., and Kenyatta Ortega Silcott were convicted of criminal conspiracy to commit the misdemeanor offense of "drag racing" in violation of Ala. Code 1975, § 13A-4-3. *Page 40 
Greer was fined $500 and ordered to serve 10 days in the county jail. Moore was fined $100. Silcott was fined $250 and his 10-day sentence in the county jail was suspended upon payment of the fine. This is a consolidated appeal from those convictions. Although two issues are presented by the three defendants, we need only address the first.
 I
The defendants are correct in their contention that the trial court should have granted their motion for judgment of acquittal because the State's evidence of conspiracy was based solely upon the presence of the defendants at the time and place where a drag race was expected to occur.
The State's evidence, viewed in its most favorable light, shows only that the defendants were present, among a group of approximately 40 or 50 people at a location on a road in an apparently rural area of Tallapoosa County where a drag race, or some other type of automobile race, was going to occur at some time in the near future. There was evidence that three individual cars separately traveled up and down the highway on different occasions at a high rate of speed. There was testimony that "[t]he crowd got to — when [one car] went down the first time, they kind of, . . . kind of egging things on, hollering." Other than this, there was no evidence to indicate that any car had been or was actually "racing," as that term is defined by Ala. Code 1975, § 32-5A-178(c),[1] or "drag racing," as that term is defined by § 32-5A-178(b).[2]
The offense of criminal conspiracy is defined by Ala. Code 1975, 13A-4-3:
 "(a) A person is guilty of criminal conspiracy if, with the intent that conduct constituting an offense be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one or more of such persons does an overt act to effect an objective of the agreement.
 "(b) If a person knows or should know that one with whom he agrees has in turn agreed to or will agree with another to effect the same criminal objective, he shall be deemed to have agreed with such other person, whether or not he knows the other's identity.
". . . .
 "(f) Liability as accomplice. — Accomplice liability for offenses committed in furtherance of a conspiracy is to be determined as provided in section 13A-2-23."
The elements of conspiracy are: first, the specific intent that a crime be performed; second, an agreement with another person to engage in or cause that crime to be performed; and third, the commission of an overt act by one of the conspirators in furtherance of the conspiracy. SeeChisler v. State, 553 So.2d 654, 664-65 (Ala.Cr.App. 1989) (distinguishing accomplice liability and conspiracy). Obviously, " § 13A-4-3 does not require that the criminal offense agreed to be actually completed." Commentary to §13A-4-3 at 91. "Conspiracy is a distinct and separate substantive offense from the crime intended, and does not require that the criminal offense agreed to be actually completed." Calhoun v. State, 460 So.2d 268, 272
(Ala.Cr.App. 1984).
The existence of a "confederation or conspiracy need not be proved by positive testimony. It seldom can be. The trier of fact is to determine its existence and extent from all the evidence in the case and the conduct of the parties."Smith v. Board of Commissioners of the Alabama State Bar,284 Ala. 420, 428, 225 So.2d 829, 835 (1969). *Page 41 
 "[S]uch unlawful community of purpose entered into as a conspiracy need not be proven by positive testimony. It is rarely so to be shown. It must be determined by the triers of fact from the conduct of parties and all the relative testimony . . .; that of the attendant circumstances applying and accompanying the doing of the act, and from the conduct of the defendant subsequent to the criminal act."
Lash v. State, 244 Ala. 48, 53, 14 So.2d 229, 232 (1943). A conspiracy "may be shown by circumstantial proof, or inferred from the conduct of the participants in execution of the conspiracy." Skumro v. State, 234 Ala. 4, 7, 170 So. 776, 779
(1936). "Conspiracy may be inferred from the conduct of the conspirators." Cleveland v. State, 20 Ala. App. 426, 428,103 So. 707, 710 (1924), cert. denied, 212 Ala. 635, 103 So. 711
(1925).
The State argues that the defendants "were members of a crowd gathered to observe an illegal but public drag race" and "were properly found guilty of conspiracy because their presence in the crowd proved their knowing participation as spectators to the illegal event." Appellant's brief at 20. We disagree.
The evidence does afford the implication that the defendants were members of a crowd apparently gathered to observe an illegal but public drag race and that they were spectators. Other than the fact of their mere presence, there is nothing to indicate that any defendant encouraged or "egged on" any form of racing.
"Merely being at or near the scene of a crime even without raising the hue and cry does not make a man either principal or accessory to that crime." Leonard v. State, 43 Ala. App. 454,462, 192 So.2d 461, 469 (1966). "[I]f presence at the time and place a crime is committed, in conjunction with other facts and circumstances, tends to connect the accused with the commission of the crime, then the jury may find the accused guilty."Dolvin v. State, 391 So.2d 133, 137 (Ala. 1980), quoted in Paynev. State, 487 So.2d 256, 261 (Ala.Cr.App. 1986). " 'The mere fact that a person is present at the scene of a crime but does not in any way participate in or encourage its commission does not make him a party to the crime.' " Pate v. State,45 Ala. App. 15, 17, 221 So.2d 691, 693 (1969).
 "We have consistently held that mere association with persons involved in a criminal enterprise is insufficient to prove participation in a conspiracy. See, e.g., United States v. Horton, 646 F.2d 181, 185 (5th Cir. 1981); United States v. Fitzharris, 633 F.2d 416, 423 (5th Cir. 1980); United States v. Barrera, 547 F.2d 1250, 1257 (5th Cir. 1977). We have just as strongly emphasized that mere presence at the scene of the crime is not enough to sustain a conspiracy conviction. See, e.g., United States v. Reyes, 595 F.2d 275, 280 (5th Cir. 1979); Barrera, supra, at 1256. Presence followed by flight is also inadequate proof. United States v. Lopez-Ortiz, 492 F.2d 109, 115 (5th Cir. 1974). In this case, we are confronted with the combined circumstances of DeSimone's association with his co-defendants at various times over a period of several days and his attempted flight in the middle of the night from an automobile which was ditched near the Greensboro airport, a remote area. This evidence certainly arouses suspicion, but does it prove beyond a reasonable doubt that DeSimone conspired to import and distribute marijuana? We think not.
 " 'Obviously, appellant's presence was highly suspicious, but this is not a substitute for evidence sufficient to prove beyond a reasonable doubt. Although it is certainly possible — maybe even probable — that [the appellant] was involved in the conspiracy, such speculation does not constitute proof beyond a reasonable doubt, and juries "must not be permitted to convict on suspicion and innuendo." ' "
 "United States v. Rozen, 600 F.2d 494, 497 (5th Cir. 1979), quoting United States v. Littrell, 574 F.2d 828, 833 (5th Cir. 1978)."
United States v. DeSimone, 660 F.2d 532, 537 (5th Cir. 1981), cert. denied, 455 U.S. 1027, 102 S.Ct. 1732, 72 L.Ed.2d 149 and456 U.S. 928, 102 S.Ct. 1976, 72 L.Ed.2d 444 *Page 42 
(1982) (footnote omitted). "Merely being a knowing spectator is insufficient" to support a conspiracy conviction.United States v. James, 510 F.2d 546, 552 (5th Cir.), cert. denied, 423 U.S. 855, 96 S.Ct. 105, 46 L.Ed.2d 81 (1975). Mere presence and guilty knowledge will not suffice to impose criminal liability unless coupled with the doing of something to forward the crime — "that he was a participant rather than merely a knowing spectator." United States v. Garguilo,310 F.2d 249, 254 (2d Cir. 1962).
 "An inference of criminal participation cannot be drawn merely from presence; a culpable purpose is essential. In Hicks v. United States, [150 U.S. 442, 14 S.Ct. 144, 37 L.Ed. 1137 (1893),] the Supreme Court recognized that the accused's presence is a Circumstance from which guilt may be deduced if that presence is meant to assist the commission of the offense or is pursuant to an understanding that he is on the scene for that purpose. And we have had occasion to say that '[m]ere presence would be enough if it is intended to and does aid the primary actors.' Presence is thus equated to aiding and abetting when it is shown that it designedly encourages the perpetrator, facilitates the unlawful deed — as when the accused acts as a lookout — or where it stimulates others to render assistance to the criminal act. But presence without these or similar attributes is insufficient to identify the accused as a party to the criminality."
Bailey v. United States, 416 F.2d 1110, 1113-14 (D.C. 1969) (footnotes omitted). In the present case, the presence of the defendants does not imply participation. See United States v.Cruz-Valdez, 773 F.2d 1541, 1546-47 (11th Cir. 1985), cert. denied, 475 U.S. 1049, 106 S.Ct. 1272, 89 L.Ed.2d 580 (1986) ("A jury may find knowledgeable, voluntary participation from presence when the presence is such that it would be unreasonable for anyone other than a knowledgeable participant to be present. . . . [W]e think it reasonable for a jury to conclude that. . . a prudent [drug] smuggler is not likely to suffer the presence of unaffiliated bystanders [on a vessel laden with a large quantity of marijuana]."); United States v.Martinez, 479 F.2d 824, 829 (1st Cir. 1973) ("It is usually said that mere presence is not enough; however, there are circumstances where presence itself implies participation." Complicity shown through defendant's active participation in addition to presence.).
 "The same rule of evidence must obtain in prosecutions of this character as in all other criminal prosecutions, and, as insisted, there is no rule of law or presumption that because of the mere presence of the accused at a time and place where crime is being committed he is guilty of the commission of the offense. Such a rule has never been and should never be invoked in any criminal prosecution, for a person ever so innocent may by force of circumstances be present and witness the commission of the most heinous of crimes, and it would be an unsafe rule, unsound in principle, and repugnant to human justice and right, to say that by his mere presence he is presumed to be the perpetrator of or connected with the commission of the offense."
Lee v. State, 18 Ala. App. 566, 567, 93 So. 59, 60 (1922). "Of course, evidence of a 'mere knowing presence' is insufficient to convict a person of participation in a conspiracy." UnitedStates v. Robertson, 659 F.2d 652, 656 (5th Cir. 1981). "It is well established that close association with a coconspirator or mere presence at the scene of a crime is insufficient evidence of knowing participation in a conspiracy." United States v.Sarro, 742 F.2d 1286, 1298 (11th Cir. 1984). See also UnitedStates v. Espinosa, 771 F.2d 1382, 1393 (10th Cir.), cert. denied, 474 U.S. 1023, 106 S.Ct. 579, 88 L.Ed.2d 561 (1985).
 "Most important to this case is the well-established rule that mere association, knowledge or approval of a conspiracy is not sufficient to prove a defendant's guilt. [United States v. Melcher-Lopez, 627 F.2d 886 (9th Cir. 1980)]; United States v. Dalzotto, 603 F.2d 642, 645 (7th Cir. 1979), cert. denied, 444 U.S. 994, 100 S.Ct. 530, 62 L.Ed.2d 425; United States v. Baker, 499 F.2d 845 (7th Cir. 1974), *Page 43 cert. denied, 419 U.S. 1071, 95 S.Ct. 659, 42 L.Ed.2d 667; Bailey v. United States, 416 F.2d 1110
(D.C. Cir. 1969). However, while 'mere presence at the scene of the crime or mere association with conspirators will not themselves support a conspiracy conviction . . . presence or a single act will suffice if the circumstances permit the inference that the presence or act was intended to advance the ends of the conspiracy.' United States v. Mancillas, 580 F.2d 1301, 1308 (7th Cir. 1978), cert. denied, 439 U.S. 958, 99 S.Ct. 361, 58 L.Ed.2d 351; see also United States v. Dalzotto, 603 F.2d at 645."
United States v. Xheka, 704 F.2d 974, 988989 (7th Cir.), cert. denied, 464 U.S. 993, 104 S.Ct. 486, 78 L.Ed.2d 682 (1983). "The mere fact that a person witnesses a crime does not make him an accomplice." Nelson v. State, 405 So.2d 392, 397
(Ala.Cr.App. 1980), reversed on other grounds, 405 So.2d 401
(Ala. 1981).
"[N]o rule is more fundamental or better settled than that convictions cannot be predicated upon surmise, speculation, and suspicion to establish the accused's criminal agency in the offense charged." Benefield v. State, 286 Ala. 722, 724,246 So.2d 483, 485 (1971). Accord, Colley v. State, 41 Ala. App. 273,275, 128 So.2d 525, 527 (1961). "[T]he possibility that a thing may occur is not alone evidence, even circumstantially, that the thing did occur." Parker v. State, 280 Ala. 685, 691,198 So.2d 261, 268 (1967). "A conviction for crime, slight or serious, cannot be rested upon the imagination, conjecture, or guesswork" of any witness. Catrett v. State, 25 Ala. App. 331,333, 146 So. 287, 289-90 (1933).
"An inference can be drawn only from facts, and mere possibilities will not sustain a legitimate inference."Rungan v. State, 25 Ala. App. 287, 288, 145 So. 171, 172 (1932). "In our opinion the evidence, at best, did no more than give rise to a suspicion, surmise, or conjecture that appellant might be guilty as charged. And this of course was not enough."Orr v. State, 32 Ala. App. 77, 80, 21 So.2d 574, 576 (1945). See also Ammons v. State, 20 Ala. App. 283, 101 So. 511 (1924). "If the evidence raises a mere suspicion, or, admitting all it tends to prove, defendant's guilt is left in uncertainty, or dependent upon conjecture or probabilities, the court should instruct the jury to acquit." Jones v. State, 90 Ala. 628, 630,8 So. 383, 384 (1890). "For circumstantial evidence to be sufficient to justify the court in submitting the case to the jury, it must be of such a character as to overcome, prima facie, the presumption of innocence." Perry v. State,11 Ala. App. 195, 196-97, 65 So. 683 (1914). "The scintilla rule has no application in a criminal prosecution, where the accused enters upon his trial clothed with the presumption of innocence." McKee v. State, 26 Ala. App. 589, 589, 164 So. 305
(1935). "While the government need not prove the existence of a formal agreement or otherwise rely on direct evidence to establish a conspiracy, . . . it must do more than pile 'inference upon inference' upon which to base a conspiracy charge." United States v. Sheikh, 654 F.2d 1057, 1063 (5th Cir. 1981), cert. denied, 455 U.S. 991, 102 S.Ct. 1617,71 L.Ed.2d 852 (1982). "It is axiomatic that in the trial of all criminal cases the state has the burden of proving every element of the offense charged, and to a degree beyond a reasonable doubt and to a moral certainty." Kelly v. State,273 Ala. 240, 243, 139 So.2d 326, 329 (1962). Accord, Cobb v.State, 495 So.2d 705 (Ala. 1985).
In White v. State, 546 So.2d 1014, 1016-18, 1021-23
(Ala.Cr.App. 1989), this Court set out the principles governing the standard for appellate review of the sufficiency of the evidence. See also Ex parte Cunningham, 548 So.2d 1049, 1050
(Ala. 1989). Applying those principles to the facts of this case, we find that the defendants' convictions are based on suspicion, conjecture, and surmise, and therefore, must be reversed. Under Burks v. United States, 437 U.S. 1,98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), the principles of jeopardy bar a retrial. Therefore, the judgments of the circuit court are reversed and in each cause a judgment for the defendant is rendered.
REVERSED AND RENDERED.
All Judges concur.
[1] " 'Racing' is defined as the use of one or more vehicles in an attempt to outgain, outdistance or prevent another vehicle from passing, to arrive at a given destination ahead of another vehicle or vehicles, or to test the physical stamina or endurance of drivers over long distance driving routes."
[2] " 'Drag race' is defined as the operation of two or more vehicles from a point side by side at accelerating speeds in a competitive attempt to outdistance each other, or the operation of one or more vehicles over a common selected course, from the same point to the same point, for the purpose of comparing the relative speeds or power of acceleration of such vehicle or vehicles within a certain distance or time limit." *Page 44